URSULA UNGARO, UNITED STATES DISTRICT JUDGE
THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss Plaintiffs' Complaint (the "Motion"). D.E. 11. The Court has considered the Motion, the pertinent portions of the record and is otherwise fully advised in the premises. The Motion is fully briefed and ripe for disposition. For the reasons stated briefly below, the Motion is GRANTED with Prejudice.
I. Background
By way of background, the action is brought as a putative class action by Plaintiffs Roger and Maureen Carretta, former passengers on Royal Caribbean's Harmony of the Seas. D.E. 1. The Complaint contains a single count against Defendants *1302 for alleged violations of the Florida Deceptive and Unfair Trade Practices Act. §§ 501.201, Florida Statutes ("FDUPTA"). The alleged deceptive and unfair practices consist of: (1) Royal Caribbean receiving undisclosed commissions for the sale of travel insurance issued by Arch Insurance Company; (2) bundling the travel insurance as part of Royal Caribbean's "Travel Protection Program;" and (3) creating the impression that the insurance product in question was being purchased by the consumer on a pass-through basis from insurers Arch Insurance Company or Transamerica. D.E. 1 ¶ 69.
In its Motion, Royal Caribbean argues that the claim is barred by the terms and conditions of the applicable ticket contract in which Plaintiffs: (1) waived their right to maintain a class action, (2) agreed that any claims that they might bring against Royal Caribbean would be brought within six months of termination of their cruise, and (3) agreed to arbitration of any claims not based on personal injury, illness or death. D.E. 11. Plaintiffs respond that these sections of the ticket contract[1] do not apply to this dispute because, despite the expansive definition of "Carrier" in Section 2 of the ticket contract, Section 17 limits its scope by stating that "[T]o the extent permitted or required by law, this Agreement also covers Carrier's Royal Caribbean Travel Protection Program," and the Arch Insurance Policy is not the "Carrier's" because it is issued by a third party. D.E. 23. In other words, Plaintiff argues on the basis of Section 17 that because Royal Caribbean was acting in the capacity of "agent" for the issuer of the travel insurance at issue, it is not being sued as the "Carrier" and therefore the terms and conditions of the ticket contract are inapplicable. Id.
II. Analysis
The undersigned begins by agreeing with Plaintiffs that the only relevant legal principles that matter here are those used to interpret contracts. These principles are materially similar whether the Court applies Florida or maritime law. See, F.W.F., Inc. v. Detroit Diesel Corp. , 494 F.Supp.2d 1342, 1356 (S.D. Fla. 2007) ("[G]eneral federal maritime law has adopted the general rules of contract interpretation and construction."); Davis v. Valsamis, Inc. , No. 16-17081, 2018 WL 4182116, at *3 (11th Cir. Aug. 30, 2018) ("Maritime contracts 'must be construed like any other contracts: by their terms and consistent with the intent of the parties.' ") (quoting Norfolk S. Ry. Co. v. Kirby , 543 U.S. 14, 16, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) ). Most importantly for the purposes of this dispute, under both maritime and Florida law, contracts must be enforced where the language is plain and unambiguous. Norfolk S. Ry. Co. , 543 U.S. 14, 22-23, 125 S.Ct. 385 ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation."); Mycko v. M/Y AMARULA SUN , No. 14-62215-CIV, 2015 WL 2384060, at *3 (S.D. Fla. May 19, 2015) (explaining that "Under federal common law, where a contract 'is so worded *1303 that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and the Court will construe the contract as a matter of law.' ") (quoting Foreman v. Exxon, Corp. , 770 F.2d 490, 496 (5th Cir.1985) ); Hahamovitch v. Hahamovitch , 174 So.3d 983, 985 (Fla. 2015) (Under Florida law "[w]here a contract is clear and unambiguous, it must be enforced pursuant to its plain language... In such a situation, the language itself is the best evidence of the parties' intent, and its plain meaning controls.") (quotations omitted).
The Court, however, parts company with Plaintiffs regarding the scope and construction of the ticket contract. The contract states plainly and unambiguously in Section 2 that "Carrier" means, among others, the Vessel's Operator. D.E. 11-1 at 21 (" 'Carrier' " shall include: ... the Vessel's Operator."). And the Vessel's Operator in this case is indisputably Royal Caribbean. See, id. at 25 ¶ 18 (Stating that the operator is Royal Caribbean). There is simply no limiting language and no basis for carving out an exception as advocated by Plaintiffs: "except when conducting itself as an insurance agent." See D.E. 21 at 10.
In reaching this conclusion, the Court has considered Plaintiffs' reliance on Section 17 of the ticket contract which states: "To the extent permitted or required by law, this Agreement also covers Carrier's Royal Caribbean Travel Protection Programsm products ...." D.E. 21 at 6 (quoting D.E. 11-1 at 25 ¶ 17). Plaintiffs contend that by so providing, Royal Caribbean excluded the travel insurance policy from the Agreement's coverage because the travel insurance policy is issued by a third party insurer and is not a Royal Caribbean Travel Protection Product. Id. at 6-7. However, Plaintiffs fail to persuade the Court because the expansive definition of "Carrier" contained in Section 2(b) of the ticket contract encompasses Royal Caribbean, as the "Vessel Operator," in any capacity, including as insurance agent, and the language in Section 17 does not appear to be intended to limit the scope of the definition in any respect. See D.E. 11-1 at 21; D.E. 11-1 at 25. Moreover, the plain and common sense construction of Section 17 is that it seeks to make clear that the terms of the ticket contract extend to all of the products that Royal Caribbean considers to be part of its Travel Protection Program. Those products obviously include the travel insurance: Plaintiffs' "Cruise Summary," expressly referred to the Arch insurance policy as part of the Travel Protection Program. D.E. 11-1 at 8.
III. Conclusion
Having concluded that Plaintiffs' ticket contract applies to this dispute, it is apparent that the case must be dismissed with prejudice. First, it is time-barred because Plaintiffs' cruise ended on July 22, 2017, D.E. 11-1 at 8, and the case was not brought until September 21, 2018, more than six months after their disembarkation. D.E. 11-1 at 23 (Section 10(C) of the ticket contract). Second, Plaintiffs waived their right to maintain a class action against Roya Caribbean id. (Section 9(b) of the ticket contract). Accordingly, it is hereby
ORDERED AND ADJUDGED that Defendant's Motion, D.E. 11, is GRANTED. Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE. It is further
ORDERED AND ADJUDGED that the Clerk of Court SHALL administratively close this case. All future hearings are CANCELLED and all pending motions are DENIED AS MOOT.
*1304 DONE AND ORDERED in Chambers, Miami, Florida, this 26th day of November, 2018.

"The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint. Day v. Taylor , 400 F.3d 1272, 1275-76 (11th Cir. 2005) (citation omitted). However, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Id. Here, the ticket contract Guest Ticket Booklet are plainly central to Plaintiffs' claim as their arguments revolve around its construction and neither party disputes their authenticity. Thus, the Court considers these documents without converting Defendant's motion to dismiss to a motion for summary judgment.